UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAMONA MILTON,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:14-cv-0074-MCE-KJN PS

ORDER AND

FINDINGS AND RECOMMENDATIONS

In this case filed on January 13, 2014, plaintiff, who proceeds without counsel, seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1] On May 12, 2014, the Commissioner filed an answer and lodged the administrative record. (ECF Nos. 9, 10.) After plaintiff failed to file an opening motion for summary judgment in accordance with the court's scheduling order (ECF No. 4), the court issued an order to show cause on August 6, 2014, requiring plaintiff to show cause in writing why the action should not be dismissed for lack of prosecution and failure to comply with court orders. (ECF No. 13.) In that same order, the court directed plaintiff to file a motion for summary

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15).

judgment within 28 days. (Id.)

Subsequently, on September 2, 2014, plaintiff filed a two-page notice of change of address, which also made at least some representations concerning plaintiff's alleged impairments and functional limitations. (ECF No. 14.) Even though plaintiff never filed a motion for summary judgment, the court, in light of plaintiff's *pro se* status and the court's desire to resolve the action on the merits, liberally construed the September 2, 2014 filing as a motion for summary judgment, and directed the Commissioner to file a response to that motion. (ECF No. 15.) Ultimately, after receiving an extension of time, the Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment on December 1, 2014. (ECF No. 19.) Although the court permitted plaintiff to file a reply brief by December 22, 2014 (ECF No. 17), no optional reply brief was filed, and the case was then submitted on the record and briefing.[2]

After careful consideration of the applicable law, the parties' briefing, and the administrative record, the court now recommends that plaintiff's motion for summary judgment be DENIED and the Commissioner's cross-motion for summary judgment be GRANTED.

## I. BACKGROUND

Plaintiff was born on December 6, 1960, has a high school diploma, is able to communicate in English, and has no past relevant work.[3] (Administrative Transcript ("AT") 14, 27, 66, 70.) On August 17, 2010, plaintiff applied for SSI, alleging that her disability began on August 1, 2009, and that she was disabled primarily due to a left hand injury and a steel plate in her left ankle. (AT 9, 66, 70, 146, 150.)[4] On January 14, 2011, the Commissioner determined

[2] Plaintiff never directly responded to the court's order to show cause. However, in light of plaintiff's *pro se* status and the fact that plaintiff at least appears to have made a good faith attempt to comply with the court's order by submitting her September 2, 2014 filing, the court discharges the order to show cause and considers the case on the merits.

[3] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts here. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[4] Regardless of the alleged disability onset date, SSI is not payable prior to the month following the month in which the application was filed. 20 C.F.R. § 416.335.

that plaintiff was not disabled. (AT 9, 72-75.) Upon plaintiff's request for reconsideration, that determination was affirmed on May 6, 2011. (AT 9, 78-83.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which ultimately took place on January 24, 2012, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 9, 21-56.)[5]

In a decision dated March 24, 2012, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from August 17, 2010, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision. (AT 9-15.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on December 12, 2013. (AT 1-4.) Thereafter, plaintiff filed this action in federal district court on January 13, 2014, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

## II. ISSUES PRESENTED

Plaintiff generally contends that her left leg/ankle and left hand injuries prevent her from standing and walking for long, and that she is continually in pain, not in good shape, and needs help with her 11 children. (See ECF No. 14.) Plaintiff does not raise any specific issues for the court's review. However, whether or not required by applicable law, the court, given plaintiff's *pro se* status, conducts an independent review of the record to determine whether substantial evidence supports the Commissioner's findings at each material step of the five-step sequential evaluation process, outlined in greater detail below.

## III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether: (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g); and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340

[5] Plaintiff appeared at an initial hearing on October 25, 2011, but that hearing was continued to provide plaintiff an opportunity to obtain counsel. (AT 57-65.)

F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[6] At the first step, the ALJ concluded that plaintiff had not

---

[6] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

engaged in substantial gainful activity since August 17, 2010, the date that plaintiff's SSI application was filed. (AT 11.) At step two, the ALJ determined that plaintiff had the following severe impairments: residuals of left hand injury and residuals of left ankle injury. (Id.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 416.967(b) except that she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can sit and stand and/or walk for 6 hours in an 8-hour workday; can occasionally push and/or pull with her left upper extremity and left lower extremity; can occasionally climb, balance, stoop, kneel, crouch, and crawl; can occasionally handle and finger with her left upper extremity; and must avoid concentrated exposure to extreme cold, wetness, and humidity.

(AT 11.)

At step four, the ALJ found that plaintiff had no past relevant work. (AT 14.) Finally, at step five, the ALJ determined, based on the VE's testimony, that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 14-15.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from August 17, 2010, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision. (AT 15.)

B. Whether Substantial Evidence Supports the ALJ's Findings

As noted above, the court here conducts an independent review of the record to determine whether substantial evidence supports the Commissioner's findings at each material step of the five-step sequential evaluation process.

---

process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Step One

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 17, 2010, plaintiff's SSI application date. (AT 11.) Because the ALJ's step one finding was favorable to plaintiff, it was inconsequential to the ultimate non-disability determination.

Step Two

At step two, the ALJ found that plaintiff had severe impairments – more specifically, residuals of left hand injury and residuals of left ankle injury. (AT 11.) Because the ALJ's step two finding was favorable to plaintiff, it was likewise inconsequential to the ultimate non-disability determination.

Step Three

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 11.)

The claimant "bears the burden of proving that ... she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify...For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings…A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the

symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment.”).

In this case, plaintiff fails to articulate any plausible theory of how the specific criteria of a potentially applicable Listing was met or equaled based on the medical evidence of record. Indeed, no medical source opined that plaintiff met or equaled the criteria of a particular Listing. Therefore, the ALJ’s determination at step three is supported by the record.

Even if a claimant does not receive a favorable finding at step three, disability under the Act may still be established at later steps. Before proceeding to steps four and five, an ALJ must first assess a claimant’s RFC.

The ALJ’s RFC Assessment

In formulating plaintiff’s RFC, outlined above, the ALJ substantially relied on the opinion of consultative examiner and board-certified orthopedist, Dr. Dale Van Kirk, who evaluated plaintiff on December 20, 2010. (AT 12, 265-69.) Plaintiff informed Dr. Van Kirk that she had had a slip and fall accident in 1995, during which she had twisted her left ankle. (AT 265.) That injury required two surgeries in 1995 and 1996, in the course of which a steel plate was inserted into the ankle. (Id.) She had also sustained a more recent left hand injury when it was slammed in a door, which required bone graft surgery. (Id.) Plaintiff’s chief complaints were noted to be left ankle pain and left hand pain. (Id.) After interviewing plaintiff and conducting a detailed physical examination, Dr. Van Kirk opined that plaintiff could stand/walk for 6 hours total in an 8-hour day; sit without limitation; lift/carry 20 pounds occasionally and 10 pounds frequently; occasionally bend, stoop, crouch, climb, kneel, balance, crawl, push, or pull; frequently perform gross and fine manipulative activities with her left upper extremity; perform gross and fine manipulative activities with her right upper extremity without any limitation; and should avoid cold and/or damp work environments. (AT 268-69.)

////

The ALJ essentially adopted Dr. Van Kirk's functional assessment, except that she gave plaintiff the benefit of the doubt by assessing more restrictive manipulative limitations (only *occasional* handling and fingering with the left upper extremity). (AT 12.) Because Dr. Van Kirk personally examined plaintiff and made independent clinical findings, his opinion constitutes substantial evidence on which the ALJ was entitled to rely. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ also correctly noted that no treating physician had limited plaintiff to a more restrictive functional assessment than the RFC. (Id.) Additionally, the RFC was far more restrictive than the January 12, 2011 assessment by non-examining state agency physician, Dr. Jaituni, who reviewed plaintiff's records and opined, *inter alia*, that plaintiff could perform medium exertion work, frequently finger/handle with her left upper extremity, and work without any environmental limitations. (AT 270-74.)

To be sure, at the administrative hearing, plaintiff herself testified that she could not even pick up light objects, such as a glass of water, with her left hand; could only lift about 5 pounds with her right hand/arm; could not stand or walk for more than 5-10 minutes at a time; and needed assistance with bathing and getting dressed. (AT 36-37, 40-41, 43.) However, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's credibility. See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (observing that "the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...."). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

////

Here, the ALJ correctly found that plaintiff's alleged functional limitations were inconsistent with the medical opinion evidence, as discussed above. Furthermore, as the ALJ noted, a January 17, 2011 x-ray of plaintiff's left thumb showed only a small, old fracture fragment along the distal aspect of the distal phalanx with no new acute fractures, and a January 20, 2012 x-ray of plaintiff's left tibia and fibula (in the left leg) showed a healed distal tibial fracture with plate and screws still in place and no acute bony abnormality suggested. (AT 12, 14, 297-99, 337.)

The ALJ further observed that plaintiff had a very limited treatment history for her impairments, which, after the initial surgeries, involved primarily limited physical therapy and pain medications, which plaintiff stated she largely did not take because they upset her stomach. (AT 13, 32-35, 41-42.) Such conservative treatment was a proper consideration. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment").

The ALJ also pointed to inconsistencies between plaintiff's testimony and conduct. For example, although plaintiff testified at the hearing that she did not drink alcohol at all, consultative examiner Dr. Van Kirk, in the course of his evaluation, noted that plaintiff slurred her speech and had a moderate smell of alcohol. (AT 13, 47-48, 265.) Furthermore, even though plaintiff testified that she had been using a cane for 2 years, Dr. Van Kirk stated that plaintiff did not have an assistive device at her evaluation and that such a device was not medically necessary. (AT 45-46, 267, 269.) Plaintiff likewise did not have a cane at the administrative hearing, but stated that she had left it on the bus. (AT 45-46.) Plaintiff also claimed that she tried to avoid using her cane, because she did not like people staring at her. (AT 46.) Finally, despite claiming to be unable to stand or walk for more than 5-10 minutes, plaintiff testified that she had recently tripped and fallen on some steps, but then got back up, while on a shopping trip for Christmas presents. (AT 49.)

To be sure, the record also contains some other evidence suggesting that plaintiff's activities may be more limited. However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence.

See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ...Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

In sum, the court finds that the ALJ properly considered the medical evidence and plaintiff's own subjective testimony in formulating the RFC, and that the RFC is thus based on substantial evidence in the record as a whole.

Step Four

At step four, the ALJ determined that plaintiff had no past relevant work. (AT 14.) Because the ALJ's step four finding was favorable to plaintiff, it was inconsequential to the ultimate non-disability determination.

Step Five

At step five, the ALJ found that, considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 14.)

Here, the record does not reveal any dispute concerning plaintiff's age, education, or work experience. Furthermore, the ALJ's RFC was supported by substantial evidence for the reasons outlined above. At the administrative hearing, the ALJ provided the VE with a hypothetical that encompassed plaintiff's age, education, work experience, and RFC. (AT 14-15, 50, 53-54.) Based on that hypothetical, the VE testified that plaintiff could perform the following

////

////

representative occupations: (1) security guard, with jobs numbering 500,000 nationally and 7,500 in the San Francisco Bay area[7]; and (2) usher, with jobs numbering 55,000 nationally and 1,200 in the San Francisco Bay area. (AT 15, 53-54.) "An ALJ may take administrative notice of any reliable job information, including information provided by a VE…A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). The VE's testimony here demonstrates that the other work plaintiff could perform is available in significant numbers. See, e.g. Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (finding 2,300 jobs in the region to constitute a significant number of jobs). Therefore, the ALJ's step five finding was supported by substantial evidence.

Having found plaintiff capable of performing other work at step five, the ALJ then justifiably determined that plaintiff had not been under a disability, as defined in the Act, from August 17, 2010, the date that plaintiff's SSI application was filed, through the date of the ALJ's decision. (AT 15.)

## V. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) be DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) be GRANTED.
3. Judgment be entered for the Commissioner.
4. The Clerk of Court be directed to close this case.

IT IS ALSO HEREBY ORDERED that the court's August 6, 2014 order to show cause (ECF No. 13) is DISCHARGED.

////

[7] Plaintiff resides in Vallejo, California.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated: January 21, 2015

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE